1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER DELGADO,                            No.  2:22-cv-02139 AC

12                  Plaintiff,

13          v.                                 ORDER

14   ROBERT BONTA, et al.,

15                  Defendants.

16

17          This employment discrimination case is before the undersigned Magistrate Judge for all

18   purposes on the consent of the parties.  ECF No. 10.  Plaintiff, who is represented by counsel,

19   filed a complaint on November 30, 2022, alleging violations of Title VII of the Civil Rights Act

20   of 1965.  ECF No. 1.  Defendants moved to dismiss.  ECF No. 6.  On February 9, 2023, the

21   motion was granted, and the complaint was dismissed with leave to amend except as to claims

22   against individual defendants, which were dismissed with prejudice.  ECF No. 17.  On March 10,

23   2023, plaintiff filed a First Amended Complaint ("FAC"), naming as defendant "Robert Bonta,

24   Chief Executive Officer, Department of Justice (CA)."  ECF No. 19.  Now before the court is

25   defendants' motion to dismiss the FAC in its entirety and without leave to amend.  ECF No. 21.

26   For the following reasons, the motion is GRANTED.

27   ////

28   ////

                                                  1

1          **I. Background**

2                A.          The First Amended Complaint

3          Plaintiff brings his FAC against the California Department of Justice and Robert Bonta in

4   his official capacity as the Chief Executive Officer of the Agency.  ECF No. 19 at 2.  Plaintiff

5   identifies himself as an "American born Mexican" and indicates that he intends to bring his

6   claims on behalf of "himself and other non-Caucasians and Mexican Americans."  Id.  Plaintiff

7   brings claims for (1) discrimination, (2) "unlawful employment practices," and (3) retaliation in

8   violation of 42 U.S.C. 2000e-5, § 2000e-7, and § 2000e-16 et seq., and for (4) Intentional

9   Infliction of Emotional Distress under state law.  ECF No. 19 at 3, 5, 8, 13.  The facts alleged to

10  support plaintiff's claims are as follows.

11         From early July 2002 through April 30, 2022, the DOJ employed the plaintiff in its

12  Division of Operations, Contracts and Purchasing Unit.  Id. at 3.  On December 16, 2019, plaintiff

13  interviewed for an SSM II position.  Id.  The Interview panel was composed of the Deputy

14  Director of Operation, the Managing Agent III (M), the Supervising Deputy Attorney General,

15  and a Human Resources (H.R.) representative.  Id.  The Managing Agent III (M) excluded the

16  other SSM II (a Mexican American) from the interview panel.  Id.  Although plaintiff had

17  managed both the Non-Information Technology contracts unit and the Legal contracts unit for

18  four and half years, the interview panel selected a Caucasian for the SSM II position.  Id.

19         Plaintiff filed a "Formal Internal EEOC Complaint" but when he requested copies of his

20  interview sheet, the Managing Agent III (M) would not release his interview results and told

21  plaintiff he would have to file a Public Record request for his own result sheet.  Id. at 4.  When

22  the plaintiff filed a Merit Request for his interview results, the H.R. director denied that request

23  without any specific grounds.  Id.  In or around April 2020, plaintiff contacted another Managing

24  Agent (B) who worked in the Risk Management Unit to set up a mediation with the Managing

25  Agent III (M) and the plaintiff's then supervisor to request that plaintiff be removed from

26  Managing Agent III (M)'s bullying tactics, harassment, and hostility.  Managing Agent (B) took

27  no action.

28  ////

2

1    On March 10, 2020, plaintiff filed another "Internal EEOC complaint," and only after

2    filing this complaint was plaintiff removed from Managing Agent III (M) and the Managing

3    Agent II (P)'s direct chain of supervision.  Id. at 4-5.  However, in March 2022, after the DOJ's

4    Internal EEOC investigation found sufficient evidence that Managing Agent III (M) and

5    Managing Agent II (P) committed unlawful employment practices against the plaintiff, the

6    the Division Chief and the Deputy Division Chief returned plaintiff's unit back to Managing

7    Agent II (P)'s supervision.  Id. at 5.  Plaintiff received reports from various other non-Caucasian

8    employees that they were also mistreated and/or discriminated against.  Id. at 6-8.  The "thought

9    of going back under the Managing Agent III (M) and the Managing Agent II (P) direct chain of

10   supervision" caused plaintiff mental distress such that he "took an early retirement from State

11   Service."  Id. at 13.

12   "On March 3, 2022, after the California Department of Justice provided a positive

13   discrimination, harassment and retaliation findings, March 7, 2022, the Plaintiff filed charges

14   before the State of California Department of Fair Employment and Housing."  Id. at 13.  On

15   March 7, 2022, the State of California Department of Fair Employment and Housing issued a

16   Notice-of-Right-to-Sue Letter.  Id.  On June 1, 2022, plaintiff filed charges with the Federal Equal

17   Employment Opportunity Commission.  Id.  Plaintiff alleges that on September 2, 2022, the

18   Federal Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue Letter,

19   which is attached to the complaint.  Id. at 14.

20   The court notes that the document attached to the complaint is not in fact an EEOC right

21   to sue letter, but a letter dated March 3, 2022, from the Equal Employment Rights and Resolution

22   Office of the California Department of Justice.  ECF No. 19-2 at 1-2.  The FAC's many

23   references to investigation of plaintiff's allegations (variously identified or mis-identified as an

24   "Internal EEOC Investigation," "EEO Investigation," investigation by the EER&R Office, or

25   simply "internal investigation") appear to refer to a single investigation conducted by the Equal

26   Employment Rights and Resolution ("EER&R") Office of the California Department of Justice in

27   response to plaintiff's complaint.  The EEOC would not have been involved in this investigation,

28   which predated plaintiff's submission to the federal agency.  Plaintiff was informed that the

3

1   EER&R investigation "concluded that there is sufficient evidence to warrant finding a violation

2   of the Department's Policy Prohibiting Discrimination, Harassment and Retaliation" and also

3   "revealed some management concerns." ECF No. 19-2 at 1. The determination letter did not

4   specify the nature of the policy violations that were substantiated or the management concerns

5   that were revealed. Id.

6          B. Motion to Dismiss

7          Defendants move to dismiss on several grounds: (1) individual defendants cannot be

8   personally liable under Title VII; (2) The IIED claim is barred because plaintiff fails to plead

9   facts to demonstrate he complied with the Government Claims Act; (3) allegations in support of

10   plaintiff's Title VII claims before August 5, 2021 are time-barred for failure to exhaust

11   administrative remedies; (5) the FAC should be dismissed because plaintiff fails to plead facts

12   sufficient to support his claims; and (6) plaintiff cannot seek punitive damages from the DOJ.

13   ECF No. 21 at 3-13.

14          Plaintiff filed a one-and-a-half-page statement of opposition that contains no substantive

15   argument responsive to defendant's points and authorities or to any of the issues raised by the

16   motion. Rather than responding to the merits of defendants' motion, plaintiff merely asks that the

17   motion be denied or, alternatively, for an opportunity to file a second amended complaint. ECF

18   No. 23.[1] Defendants urge the court to dismiss the case with prejudice due to the futility of

19   amendment, plaintiff's failure to meaningfully oppose the motion, and the fact that plaintiff has

20   already had an opportunity to amend the complaint. ECF No. 24.

21                              **II. Analysis**

22          A. Legal Standards Governing Motions to Dismiss

23          "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

24   sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

25   _____

26   [1] Had plaintiff's counsel inadvertently failed to upload a prepared memorandum of points and
    authorities to the court's electronic filing system as an attachment to his bare statement of

27   opposition, the court trusts that the error would have been promptly corrected upon receipt of
    defendant's reply. That response highlighted the failure of the "scanty Opposition" to provide

28   any factual or legal basis for the motion to be denied.

                                    4

1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice.  See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

B.  There Is No Individual Liability Under Title VII

Defendants argue, as they did on their previous motion to dismiss, that this case should be dismissed with prejudice as to defendant Bonta because individuals are not subject to liability under Title VII.  See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993).  "Congress assessed civil liability only against an employer under Title VII," and the "statutory scheme itself

5

1    indicates that Congress did not intend to impose individual liability on employees." Id.

2    Numerous Ninth Circuit cases have reached this same conclusion.  Craig v. M&O Agencies, Inc.,

3    496 F.3d 1047, 1058 (9th Cir. 2007) ("We have long held that Title VII does not provide a

4    separate cause of action against supervisors or co-workers."); Padway v. Palches, 665 F.2d 965,

5    968 (9th Cir.1982) (affirming summary judgment for individual defendants on Title VII claims);

6    Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998) (holding that

7    district court properly dismissed employment discrimination claims against individual

8    defendant.).

9            Plaintiff counters summarily that defendant Bonta is sued in his official capacity only.

10   ECF No. 23 at 2.  However, as the court explained in its prior order, Title VII claims must be

11   asserted against the employing entity, not against any individual in their personal *or* official

12   capacity.  See, Lam v. City & County of San Francisco, No. C 08-4702 PJH, 2010 WL 235081, at

13   *9 (N.D. Cal. Jan. 21, 2010) (explaining why both individual and "official capacity" individual

14   defendants are improper).  The court has already dismissed the Title VII claims against Bonta

15   with prejudice.  Accordingly, the court construes all Title VII claims as stated against the

16   California Department of Justice only.

17           C.  Plaintiff's Title VII Claims Are Largely Time-Barred

18               1.  Applicable Timeliness Rules

19           Title VII actions cannot proceed in federal court unless a charge of discrimination has

20   been filed with the Equal Employment Opportunity Commission (EEOC).  42 U.S.C. § 2000e-

21   5(e)(1); Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001).  "[I]n a case of an

22   unlawful employment practice with respect to which the person aggrieved has initially instituted

23   proceedings with a State or local agency with authority to grant or seek relief . . .  such charge

24   shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged

25   unlawful employment practice occurred, or within thirty days after receiving notice that the State

26   or local agency has terminated the proceedings under the State or local law, *whichever is earlier*,

27   and a copy of such charge shall be filed by the Commission with the State or local agency."  42

28   U.S.C. § 2000e-5(e)(1) (emphasis added).

Specifically, "[an employee] must file the charge with the EEOC within 300 days of the employment practice . . . A claim is time barred if it is not filed within these time limits." Natl. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113.  A failure to exhaust subjects the allegations to dismissal under Federal Rule of Civil Procedure 12(b)(1) because the court lacks subject matter jurisdiction, and under Rule 12(b)(6) because failure to exhaust amounts to failure to state a claim upon which relief can be granted.

2.  Discussion

Plaintiff alleges that he filed his EEOC charge on June 1, 2022.  ECF No. 19 at 4, 10, 11. Accordingly, a timely claim must rest on events from August 5, 2021 (300 days before the charge was filed) forward.  Discrete employment actions prior to August 5, 2021, cannot support a claim for relief.

Plaintiff's first cause of action, alleging discrimination, is based on the following discrete incidents: (1) failure to promote plaintiff after he was interviewed for a position in December 2019; (2) management's failure in April 2020 to respond appropriately to "bullying, harassment, and hostility" by supervisors; and (3) returning plaintiff's work unit to the supervision of a Managing Agent who had committed known unlawful employment practices, in March 2022. ECF No. 19 at 3-5.  The alleged failure to promote is a distinct adverse employment action for which timely exhaustion was required.  See Natl. R.R. Passenger Corp., 536 U.S. at 114 ("[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and must be exhausted as a separate actionable "unlawful employment practice.").  Because the failure to promote preceded plaintiff's EEOC charge by more than 300 days, this claim is time barred.  The same is true of the alleged failure to respond to a request for mediation and remedial action in April 2020.  The 2022 supervisorial reassignment is the only alleged discriminatory action that falls within the limitations period.  Plaintiff has offered no theory of timeliness as to the pre-August 2021 incidents.

Plaintiff's second cause of action, for unlawful employment practices, rests exclusively on allegations that employees other than plaintiff were treated differently than Caucasian employees.

7

1   ECF No. 19 at 5-8.  Approximate dates are provided for some incidents but not others.  The dates

2   that are provided range from February 2019 to July 2020, which fall outside the limitations

3   period.  Plaintiff has offered no theory of timeliness.

4           Plaintiff's third cause of action, retaliation, is based on the June 2022 return of his unit to

5   supervision by someone who had been found to have committed unlawful employment practices.

6   ECF No. 19 at 10-11.  To the extent the claim is based on this "retainment" of a discriminatory

7   manager, it appears to be timely.[2]

8           D.  Plaintiff's First Cause of Action (Discrimination) Fails to State a Claim

9           To state a claim for discrimination under Title VII, a plaintiff must plead facts that show:

10  (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced

11  an adverse employment action; and (4) similarly situated individuals outside the plaintiff's

12  protected class were treated more favorably, or other circumstances surrounding the adverse

13  employment action give rise to an inference of discrimination.  Fonseca v. Sysco Food Servs. of

14  Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004).  The allegations of the FAC fail to support a

15  claim for relief.

16          As the court has already noted, the alleged failure to promote and failure to take corrective

17  action fall outside the applicable limitations period and cannot support a claim for relief.[3]

18  Moreover, plaintiff affirmatively alleges in support of this claim that he was denied promotion

19  "because the Plaintiff opposed and attempted to correct unlawful employment practices."  ECF

20  No. 19 at 3.  That is retaliation, not discrimination.  The retaliation claim is addressed separately

21  below.

22

23

24  [2]  The FAC elsewhere states that this reassignment happened in March of 2022.  See ECF No. 19
    at 5.
25  [3]  Apart from the timeliness problem, the allegations about these incidents fail to state a claim for
26  relief.  As to the failure to promote, the facts that plaintiff is Mexican American and a white
    person got the job do not establish racial discrimination.  The FAC does not present facts showing
27  that plaintiff was qualified for the position or supporting an inference that the decision was race-
    based.  Similarly, the facts of the FAC do not demonstrate that the alleged failure to take
28  corrective action was based on plaintiff's race or ethnicity.

1    The only potentially timely factual basis for this claim is the alleged reassignment to

2    plaintiff's unit of a manager with a known history of discrimination.  The court doubts that this

3    supervisory assignment can constitute an "adverse employment action" within the meaning of

4    Title VII.  Defendant's motion to dismiss contends that it cannot, ECF No. 21-1 at 13, and

5    plaintiff has provided no responsive argument or authority in support of his theory.  The FAC is

6    devoid of factual allegations that the 2022 change in supervision concretely affected the terms of

7    plaintiff's employment.  See Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d

8    1115, 1126 (9th Cir. 2000) (adverse employment actions are those that materially affect terms and

9    conditions of employment).  Without facts to support a legal conclusion that there was an adverse

10   employment action within the meaning of Title VII, there can be no basis for relief.  For this

11   reason, the FAC fails to state a claim for discrimination.  Plaintiff has identified no material facts

12   that could be added by amendment to cure this fundamental defect.

13   Moreover, the FAC lacks allegations that could possibly support an inference of racial

14   discrimination.  Proof of discriminatory motive is "critical" to any Title VII discrimination claim.

15   Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 (1977).  The chronology that

16   plaintiff recites in this claim—of being removed from the supervision of a manager about whom

17   he had complained, and then having his unit reassigned to her two years later—may violate "best

18   practices," as plaintiff alleges, but it gives no indication that the reassignment had anything to do

19   with plaintiff's race or ethnicity.  Plaintiff has not responded to the motion to dismiss with any

20   indication that additional facts are available to demonstrate that the reassignment of the

21   supervisor constituted an act of racial discrimination against him.

22   For all these reasons, the first cause of action must be dismissed.

23   E.   Plaintiff's Second Cause of Action (Unlawful Employment Practices) Fails to State a

24        Claim

25   This claim fails for several reasons.  At the outset, the court notes that "unlawful

26   employment practices" is not a Title VII cause of action at all, it is a term of art used throughout

27   the statute.  Defendants construe this claim as a reprise of the hostile work environment claim that

28   plaintiff had asserted in his initial complaint.  See ECF No. 21-1 at 13-14.  The court adopts this

9

1    construction as the most plausible reading of the FAC; plaintiff has not indicated otherwise.

2        To establish a prima facie claim for hostile work environment a plaintiff must plead

3    specific facts that establish that: (1) he was subjected to verbal or physical conduct because of a

4    protected status; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or

5    pervasive to alter the conditions of employment and create an abusive working environment.

6    Fried v. Wynn Las Vegas, LLC, 18 F.4th 643, 647 (9th Cir. 2021).  To determine if the

7    environment is sufficiently severe or pervasive to create a hostile or abusive, courts consider, "all

8    the circumstances, including the frequency of the discriminatory conduct; its severity; whether it

9    is physically threatening or humiliating, or a mere offensive utterance; and whether it

10   unreasonably interferes with an employee's work performance."  Id. (citing Christian v. Umpqua

11   Bank, 984 F.3d 801, 809 (9th Cir. 2020)).

12       This claim is based entirely on alleged acts of discrimination against employees other than

13   plaintiff, none of it involving offensive verbal or physical conduct.  ECF No. 19 at 5-8.  Plaintiff

14   does not allege that to any specific offensive conduct was directed at him.  Neither does he allege

15   that he witnessed or was otherwise subjected to offensive verbal or physical conduct directed at

16   others.  Although offensive comments and other harassment directed at coworkers can contribute

17   to a hostile work environment even when plaintiff is not the target, see Dominguez-Curry v.

18   Nevada Dept. of Transportation, 424 F.3d 1027, 1036 (9th Cir. 2005), the FAC does not contain

19   such allegations.  Rather, it alleges that on several separate occasions beginning in 2019,

20   employees of color other than plaintiff were treated less favorably in various ways than white

21   employees.

22       The acts of discriminatory treatment that are alleged in the FAC fail to rise to the level of

23   a hostile work environment as a matter of law.  There are no allegations involving overt racism,

24   threats or slurs, or hostility of any kind.  The alleged incidents of disparate treatment are discrete

25   and dissimilar, and thus fail to demonstrate pervasiveness.  Moreover, plaintiff does not allege

26   facts demonstrating that his exposure to the mistreatment of others altered the terms of his own

27   employment.  The FAC does not include facts that would support any such inference.  This issue

28   is addressed more fully below in relation to plaintiff's retaliation claim.

1   The allegations that the FAC does make regarding the harassment and bullying of plaintiff

2   and others, as opposed to discriminatory treatment, are also entirely conclusory.  See ECF No. 19

3   at 4 (alleging that plaintiff requested removal from his manager's "bullying tactics, harassment

4   and hostility").  No specific instance of bullying, harassment, or hostility are described.  The FAC

5   states repeatedly that DOJ's internal investigation established that plaintiff's supervising manager

6   was a harasser (see ECF No. 19 at 8:10, 9:9, 10:26, 13:5), but this characterization is not

7   supported by the determination letter, which states in general terms that the evidence supported a

8   finding that departmental policy had been violated.  ECF No. 19-2.

9   The allegations of the FAC do not state a claim for hostile work environment, and there is

10   no cause of action for "unlawful employment practices" against others.  Accordingly, the second

11   cause of action must be dismissed.

12   F.  Plaintiff's Third Cause of Action (Retaliation) Fails to State a Claim

13   To state a retaliation claim under Title VII, plaintiff's factual allegations must demonstrate

14   "(1) that he engaged in protected activity; (2) that he suffered an adverse action; and (3) that there

15   was a causal link between the two."  MacIntyre v. Carroll College, 48 F.4th 950, 954 (9th Cir.

16   2022) (citations omitted).  Conduct constituting a "protected activity" includes filing a charge or

17   complaint, testifying about an employer's alleged unlawful practices, and "engaging in other

18   activity intended to oppose an employer's discriminatory practices."  Raad v. Fairbanks North

19   Star Borough School Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).  An "adverse employment

20   action" is defined as a "materially adverse change in the terms and conditions" of employment.

21   Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 53 (2006).  "The Court refers to

22   material adversity to separate significant from trivial harms."  Id. at 54.

23   Here again, plaintiff does not plead sufficient facts to make out a prima facie case, as the

24   complaint consists entirely of conclusory assertions.  Plaintiff alleges that "…because the Plaintiff

25   opposed the Defendants unlawful employment practices, the Defendants targeted the Plaintiff and

26   adversely affected the Plaintiff and other Civil Service terms."  ECF No. 19 at 8.  Although it is

27   not clearly pled under this cause of action, the court construes the FAC as alleging that the

28   protected activity at issue was the internal EEO complaint that plaintiff made on March 10, 2020,

11

1   which was investigated by the DOJ.  The only adverse employment action alleged, however, is

2   that plaintiff was constructively terminated when, in January 2022, his unit was returned to the

3   supervision of a manager who had previously been abusive.  Id. at 8.  This is insufficient to state a

4   claim for several reasons.

5          First, as with plaintiff's discrimination claim, the facts do not demonstrate that the

6   supervisor's reassignment itself constituted an "adverse employment action."  To the extent

7   plaintiff intends to proceed on a constructive discharge theory, the claim fails because he alleges

8   no facts establishing that this assignment caused his working conditions to be intolerable.

9   E.E.O.C. v. California Psychiatric Transitions, Inc., 644 F. Supp. 2d 1249, 1270 (E.D. Cal. 2009);

10  Wallace v. City of San Diego, 479 F.3d 616, 626 (9th Cir. 2007) (constructive discharge requires

11  allegations showing "a reasonable person in the plaintiff's position would have felt he or she was

12  forced to quit because of intolerable or discriminatory work conditions.").  Plaintiff's conclusory

13  allegations in this regard merely recite the elements of constructive discharge, and are thus

14  insufficient to raise a right to relief above the speculative level.  See Twombly, 550 U.S. at 555.

15         Moreover, the FAC does not contain facts demonstrating a retaliatory motive for the

16  reassignment.  As previously noted, even if "best practices" were violated by returning plaintiff to

17  the supervision of a manager about who he had complained or who had mistreated him in the

18  past, that does not establish a legally impermissible basis for the decision.  Retaliatory motive is

19  no more supported by these facts than racially discriminatory motive.  Because plaintiff's

20  allegations do not demonstrate a causal link between his EEO complaint in March 2020 and the

21  decision in January 2022 (nearly two years later) to have plaintiff's unit returned to his former

22  manager's supervision, he has failed to make out a prima facie case of retaliation.  This claim

23  must be dismissed.

24         G.  Plaintiff's Fourth Cause of Action (Intentional Infliction of Emotional Distress) Fails
               to State a Claim

25

26             1.  Government Claims Act

27         Plaintiff's emotional distress claim is governed by California law, which requires

28  compliance with the state's Government Claims Act.  "Before a person can sue a [California]

                                           12

public entity … he or she must first file a government claim pursuant to the CGCA, codified at California Government Code section 810 et seq." Robinson v. Alameda County, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (citations omitted).  This claim presentation requirement applies to state law claims brought in federal court.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Under the Claims Act, a claim alleging a cause of action for personal injury must be presented to the public entity no later than six months after the accrual of the cause of action. Cal. Gov. Code § 911.2(a).  If the public entity provides written notice rejecting the claim, the claimant has six months thereafter to initiate a lawsuit.  Id., § 945.6(a)(1).  If the public entity fails to provide written notice, the claimant has two years from the accrual of the cause of action to initiate suit.  Id., § 945.6(a)(2).  "[T]he filing of a [state tort] claim for damages is more than a procedural requirement, it is a condition precedent to plaintiff's maintaining an action against defendant, in short, an integral part of plaintiff's cause of action."  Williams v. Horvath, 16 Cal.3d 834, 842 (1976) (citations and internal quotation marks omitted).  "[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."  State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004).

Because "compliance with the claim presentation requirement is an element of a cause of action against a public entity," plaintiff's failure "to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to general demurrer for failure to state a cause of action."  Id. at 1240-41 (citations and internal quotation marks omitted).  In federal court, failure to allege compliance with the Claims Act requires dismissal of state law claims. Karim-Panahi, 839 F.2d at 627.

Here, the FAC does not allege compliance with the Government Claims Act or mention the applicable statutory requirements.  In opposition to the motion to dismiss, plaintiff does not represent that he timely submitted a claim for damages to the public entity—he does not respond on this point at all.  The FAC emphasizes the internal agency complaint that gave rise to the EER&R investigation, but there is no reason to think such a complaint would have satisfied the Claims Act.  Even if plaintiff had demanded damages as well as an investigation and remediation,

13

the determination letter attached to the FAC suggests that plaintiff had complained about discrimination and retaliation, not intentional infliction of emotional distress or any other personal injury.  Accordingly, the FAC fails to either affirmatively allege or support an inference that the Government Claims Act may have been satisfied.  Plaintiff has given no indication that this defect could be cured by amendment.

2.   Sufficiency of Factual Allegations as to Other Elements

Apart from satisfaction of the claims presentation requirement, the elements of a claim for intentional infliction of emotional distress under California law are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.  Cochran v. Cochran, 65 Cal.App.4th 488, 494 (1998) (citation omitted).  To satisfy the first element, the alleged conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id. (citation omitted).

The FAC does not allege facts establishing any of these elements.  ECF No. 19 at 13-14.  Though plaintiff alleges that the prospect of returning to his former managers' supervision "caused undue harm to his mental psyche so horrible that he took an early retirement from State Service," he does not identify any discrete conduct that was "extreme and outrageous."  Id. at 13.  Taking plaintiff's allegations as true, being informed that one's work unit will be returned to the management of individuals who had previously been discriminatory and/or harassing does not constitute behavior that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Cochran, 65 Cal.App.4th at 494.  Because the factual allegations as pled do not, on their face, support a claim for intentional infliction of emotional distress, this claim must be dismissed for failure to state a claim.

In opposition to the motion to dismiss, plaintiff asserts his intention to "amend to raise a State cause of action under negligent infliction of emotional distress."  ECF No. 23 at 2.  He does not explain how his allegations of fact would satisfy the elements of that alternative cause of action, which would necessarily include compliance with the Government Claims Act.  Given

14

1   plaintiff's failure to proffer facts to cure that defect, the proposed amendment of the claim

2   appears futile.  The court now turns to the issue of amendment generally.

3   **III.  An Additional Opportunity to Amend is Not Appropriate**

4   "In dismissing for failure to state a claim, a district court should grant leave to amend even

5   if no request to amend the pleading was made, unless it determines that the pleading could not

6   possibly be cured by the allegation of other facts."  Doe v. United States, 58 F.3d 494, 497 (9th

7   Cir. 1995) (citation omitted).  Leave to amend may be denied where amendment would be futile

8   or previous amendment has failed to cure the complaint's deficiencies.  AE ex rel. Hernandez v.

9   County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012).  Here, the court concludes that further

10  amendment would be futile.

11  A previous round of amendment failed to result in a single adequately pleaded claim.  The

12  court's previous order granting leave to amend had clearly identified the requirements for

13  pleading facially adequate Title VII claims.  ECF No. 17.  Plaintiff filed an FAC that did not cure

14  any of the deficiencies of the original complaint, and now predictably faces a second motion to

15  dismiss.  Rather than substantively opposing any of defendant's arguments for dismissal, plaintiff

16  merely states in opposition that he "moves the Court to allow the Plaintiff to amend his Amended

17  and Verified Complaint."  ECF No. 23 at 2.  This request is unsupported by any legal argument or

18  proffer of facts that might indicate further amendment could cure the FAC's defects.

19  Plaintiff's Title VII claims are based in significant part on employment actions taken more

20  than 300 days prior to his EEOC complaint, and therefore are time-barred as a matter of law.

21  Plaintiff has not identified any theory of timeliness or additional facts that could save these

22  claims.  The state law tort claim appears to be barred by noncompliance with the Government

23  Claims Act, and plaintiff has not represented that he can truthfully allege compliance.  As to his

24  claims of discrimination, hostile work environment and retaliation, the opposition fails to make

25  even conclusory statements about the availability of facts that could state facially adequate claims

26  for relief.  Plaintiff's silence in response to the motion speaks volumes.  The court concludes that

27  further leave to amend would be futile.

28  ////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.  Conclusion**

Defendant's motion to dismiss (ECF No. 21) is GRANTED with prejudice.  Judgment shall be entered in favor of defendants and the Clerk of Court is directed to close this case.

DATED: June 20, 2023

_Allison Claire_

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE